Filed 7/13/21  In re Maribel R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| In re MARIBEL R., a Person Coming Under the Juvenile Court Law. | B308928 (Los Angeles County Super. Ct. No. 20CCJP04999) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARCOS R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Judge Pro Tempore. Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Kimberly Roura, Senior Deputy Counsel, for Plaintiff and Respondent.

———————————————————

Marcos R. (father) challenges the juvenile court's order declaring Maribel R. (daughter) a dependent under Welfare and Institutions Code section 300, subdivision (b)(1), and removing her from parental custody under section 361, subdivision (c).[1] Respondent Los Angeles County Department of Children and Family Services (Department) contends the appealed jurisdictional finding and removal order are supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences to uphold the court's order, if possible. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

---

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

Daughter was born in September 2020. A Department social worker interviewed L.R. (mother)[2] in the hospital following the birth. Mother reported that she and father met at a Narcotics Anonymous meeting about one year ago. Mother and father used methamphetamine together in the past, and father knew she used methamphetamine during her pregnancy.

According to mother, she used alcohol and marijuana, but her main addiction was methamphetamine. She used methamphetamine every day for a year and a half, but she enrolled in a 30-day rehabilitation treatment facility and stopped using methamphetamine when she learned in January 2020 that she was pregnant. Mother tested positive for methamphetamine during prenatal exams in January 2020 and July 2020. Mother admitted relapsing for a couple of days in June 2020, but denied any subsequent methamphetamine use.

The social worker also interviewed Father the same day. Father, 27 years old at the time, gave inconsistent information about his drug use. He initially reported daily alcohol and methamphetamine use beginning at age 13, and that he last used methamphetamine 7 months earlier. His heavy alcohol use placed him at risk of liver failure. Paternal grandmother kicked him out of her home because of his drinking and because he threw an inflatable horse at his nephew; she had a restraining order against father. Father was living in a sober living facility in November 2019, but he moved out of the facility to be with mother, who was not willing to live at the facility because some residents had severe mental health issues. Father could not recall the name of the facility. Father denied having any mental

---

[2] Mother is not a party to this appeal. Mother failed to reunify with her two older children, daughter's half-siblings.

health problems, but acknowledged lying to law enforcement to avoid arrest, saying he wanted to harm himself. Mother and father had moved to the Union Rescue Mission about one week before daughter was born, and they would be allowed to stay for 90 days. In a later interview, father denied his previous statements about substance use, instead claiming that he started using at age 21, got help by age 23, and had only used on weekends, not daily as previously reported.

The Department placed daughter on a hospital hold based on concerns about mother's history of drug use, including testing positive for methamphetamine twice during her pregnancy, as well as concerns about father's substance abuse history and possible domestic violence between mother and father. Mother tested negative for drugs on September 21, 2020, but father's test was positive for marijuana.

At the detention hearing on September 25, 2021, father argued there was no prima facie case to support detention and there were no reasonable efforts to prevent removal. Father proposed a safety plan whereby father would stay in the family area of the shelter with daughter, while mother moved to the singles area of the shelter. The court found a substantial risk of detriment and reasonable efforts, based on daughter being a newborn and concerns about father's substance abuse. The court ordered the Department to provide referrals for a full drug program, random weekly drug testing, parenting classes, and individual counseling.

Daughter was placed with paternal aunt G.R., who told the social worker she found out father was using when he was 18 years old. According to G.R., father completed one inpatient program about five years earlier, and a second inpatient program

4

about two years earlier. G.R. avoided communicating with father whenever possible. She found father to be disrespectful towards paternal grandmother. G.R. was unsure about whether father was currently using, pointing out that father appeared motivated to regain custody of daughter, and father was currently living with G.G., a different paternal aunt, on the condition that father not use drugs.

Father had a prior arrest for possession of a controlled substance in October 2017, when law enforcement found on father "a small green-cellophane wrapper containing an off-white crystalline substance resembling methamphetamine." The charge was dismissed in January 2018.

Prior to daughter's birth and the Department's involvement, Mother had enrolled in a drug and alcohol program, on August 2, 2020, and had participated in 8 sessions of individual therapy by August 14, 2020. Mother acknowledged that the Department's involvement was because she is a recovering addict and used drugs when she was not supposed to. Father reported he enrolled in a substance abuse outpatient program (Clinica Romero) in September 2020, but could not recall the date of enrollment. He believed the Department's involvement was due to mother's past.

According to a last-minute information report filed by the Department on November 6, 2020, father was admitted to a residential program on that same day, and was in a 10-day quarantine period. The Department remained concerned that father had a longstanding history of drug use, and although he also had a history of enrolling in programs, he had yet to address his substance abuse.

At the November 9, 2020 adjudication, mother entered a no contest plea. Minor's counsel argued that it was premature to release daughter to father, and the allegation against father was warranted based on father statements minimizing his substance use and the fact that his substance use continued despite participating in past programs. Father had not finished past programs, and because father had only recently entered a new residential program, it was premature to release the child to Father. Father argued there was no evidence father was currently using or abusing drugs, and it was speculative to find a risk of harm based on his past history of drug use. Father asked the court to return daughter to his custody, or alternatively grant unmonitored visits. The Department emphasized the inconsistencies in father's statements to the social worker, evidence of his past drug and alcohol use, and the need to ensure the safety of the infant daughter. The court agreed with the Department that father had been dishonest about his longstanding history of drug use. It sustained the allegation based on father's history of substance use and abuse, and found there were no reasonable means to ensure the daughter's safety without removing her from parental custody. The court ordered reunification services and monitored visits for both parents. Father appealed.

## DISCUSSION

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and

6

emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) "At the first stage of dependency proceedings, the juvenile court determines whether the child is subject to juvenile court jurisdiction; [the Department] has the burden to prove jurisdiction by a preponderance of the evidence." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) "At the second stage, the juvenile court must decide where the child will live while under juvenile court supervision; to support removal from parental custody, [the Department] has the burden to prove by clear and convincing evidence that there is a risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety." (*Ibid.*; see § 361, subd. (c); *In re D.P.* (2020) 44 Cal.App.5th 1058, 1068.)

## A. <u>Jurisdictional finding against father</u>[3]

Father contends there was insufficient evidence to support the juvenile court's jurisdictional finding that father's use and

_____

[3] Daughter will remain a dependent of the juvenile court regardless of the outcome of father's appeal, because father does not challenge the jurisdictional finding relating to mother, and mother has not filed a separate appeal. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.) We nevertheless exercise our discretion and reach the merits of father's challenge to the jurisdictional finding against father, because it forms the basis for the court's order removing daughter from parental custody, which father has also appealed. (*In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316 [when a jurisdictional finding may have

7

abuse of alcohol and methamphetamine placed daughter at risk of serious physical harm.  We disagree.

*Standard of review and relevant law*

We review jurisdictional findings for substantial evidence. (*In re Yolanda L., supra,* 7 Cal.App.5th at p. 992.)  "In doing so, we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders. Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment.  [Citation.]  But substantial evidence 'is not synonymous with any evidence.  [Citations.]  A decision supported by a mere scintilla of evidence need not be affirmed on appeal.  [Citation.]  . . .  "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record."  [Citation.]'  [Citation.]"  (*Ibid.*) Substantial evidence can be based on inferences that are grounded in logic and reason, but not speculation or conjecture alone.  (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 420; *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1093.)  "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.*

---

consequences for a child's placement, the appellate court has discretion to consider the question]; accord, *In re Madison S.* (2017) 15 Cal.App.5th 308, 329.)

8

(2018) 26 Cal.App.5th 320, 328–329; *In re D.C., supra*, 243 Cal.App.4th at p. 52.)

Dependency jurisdiction is warranted when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1); *In re R.T., supra,* 3 Cal.5th at p. 625.) Section 300, subdivision (b)(1) "authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child." (*In re R.T., supra,* at pp. 624, 627–633, 636–637, fn. 6 [disapproving *In re Precious D.* (2010) 189 Cal.App.4th 1251, and rejecting the reasoning requiring parental neglect for jurisdiction as set forth in *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820].) To sustain an allegation based on risk of future harm to the child, that risk must be shown to exist at the time the court makes the jurisdictional finding, but the court need not wait until the child is seriously injured to assume jurisdiction. (*In re Yolanda L., supra,* 7 Cal.App.5th at p. 993.) For children of "tender years" under the age of six, "'the finding of substance abuse . . . is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220; *In re Drake M.* (2012) 211 Cal.App.4th 754, 767.) "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) "A parent's '"[p]ast conduct may be probative of current conditions" if there is reason

9

to believe that the conduct will continue' [Citations.]"  (*In re Kadence P., supra,* 241 Cal.App.4th at p. 1384.)

*Analysis*

The record contains substantial evidence to support the trial court's finding that daughter, who was not yet two months old at the time of the jurisdictional hearing, was at substantial risk of serious physical harm based on the length and nature of father's substance abuse history.  Although father chooses to focus on the evidence favorable to him, in assessing whether to affirm the juvenile court's order, we do not ignore the substantial evidence supporting the jurisdictional finding.

We are unpersuaded by father's argument that because he does not meet the clinical definition of a substance abuser, the court's exercise of jurisdiction based on his use of drugs and alcohol was in error.  The clinical definition of substance abuse "is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [father's] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR categories can be found to be a current substance abuser."  (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1218.)  Moreover, cases finding a substantial risk of harm to a child based on a parent's drug use "'tend to fall into two factual patterns.  One group involves an identified, specific hazard in the child's environment—typically an adult with a proven record of abusiveness.  [Citations.]  The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety.'"

10

(*Id*. at p. 1220.) As stated, where, as here, the child is six years old or younger at the time of the jurisdiction hearing and thus falls within the second group, the juvenile court's "'finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (*Id*. at p. 1219; see also, *In re K.B.* (2021) 59 Cal.App.5th 593, 601.)

The record contains evidence that father drank alcohol and used methamphetamine[4] from a very young age. Father admitted he was at risk of liver failure from drinking alcohol, and he lied to law enforcement to avoid arrest. His past legal troubles, including a 2017 arrest for possession of a controlled substance and an active restraining order obtained by paternal grandmother support the reasonable inference that father had ongoing problems with drug and alcohol use. Although father had participated in at least two drug programs, and was living in a sober living facility before meeting mother one year before daughter's birth, there was evidence he used methamphetamine with mother, and used during the time mother was pregnant. Mother reported that she and father used drugs together, and father was aware of her relapse during pregnancy. Father admitted using methamphetamine just seven months before daughter's birth; he also admitted smoking marijuana, and tested positive for marijuana shortly after daughter's birth.

---

[4] Methamphetamine is "'an inherently dangerous drug known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression.'" (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 449.)

The court found father's changing story about the frequency and extent of his drug use to be less than credible, and concluded father had an ongoing history of drug use, and that a recent enrollment in a treatment program was not enough to address the risk of harm. Considering daughter's young age and the evidence of father's lengthy history of drug use, it was reasonable for the court to find that daughter would be in danger of risk of harm absent court intervention. (See *In re J.M.* (2019) 40 Cal.App.5th 913, 922 [children age three and under were at substantial risk of harm based on mother's positive test for methamphetamine and cocaine and use of marijuana]; *In re Kadence P., supra*, 241 Cal.App.4th at p. 1384–1385 [mother's substance abuse problem and attempts to conceal it placed her infant daughter at substantial risk of harm, even though the child had not yet been harmed]; *In re Christopher R., supra*, 225 Cal.App.4th 1210 at p. 1220 [father's persistent drug use rendered him incapable of providing regular care for his infant child].)

## B. <u>Removal Order</u>

Father contends there was insufficient evidence to support the court's removal order, including the finding that the Department made reasonable efforts to prevent removal.

*Standard of review and relevant law*

We review whether there was substantial evidence to support the court's removal order under the heightened standard of review set by our Supreme Court. (*Conservatorship of O.B.*

(2020) 9 Cal.5th 989, 1005.)  When "presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the [appellate] court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof."  (*Ibid*.)

       "'At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child.'" (*In re D.P., supra,* 44 Cal.App.5th 1058, 1065; accord, *In re G.C.* (2020) 48 Cal.App.5th 257, 265; *In re D.C., supra,* 243 Cal.App.4th 41, 51, 54; see § 361, subd. (c)(1).)  The juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)  The California Rules of Court also require the court to determine and make a finding as to "whether reasonable efforts to prevent or eliminate the need for removal" were made by the Department.  (Rule 5.695(d).)  "The parent need not be dangerous and the minor need not have been harmed before removal is appropriate.  The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

*Analysis*

Given that daughter was not even two months old when the court ordered removal, the record contains sufficient evidence, even under the clear and convincing evidence standard, to support the court's reasonable efforts finding and its removal order.

We are not persuaded by father's attempt to compare the facts of this case to *In re Ashly F.* (2014) 225 Cal.App.4th 803. In that case, the grounds for dependency were mother's physical abuse of the children and father's failure to protect them from the abuse. (*Id.* at pp. 806–807.) By the time of the disposition hearing, neither the Department nor the court had considered returning the children to father's custody, even though mother had moved out of the house. Based on the absence of any evidence the court or the Department had considered whether there were reasonable means to return the children to their home, the appellate court reversed the removal order. (*Id.* at pp. 808, 810–811.) Here, returning daughter to father's custody is not a reasonable alternative to removal, because father's lengthy history of using drugs and alcohol, and the evidence that such issues remain unresolved, pose a danger to his infant daughter's physical health.

We agree with father that the Department must make reasonable efforts to prevent removal, and that the court must find clear and convincing evidence of such efforts. Here, in the detention report and at the detention hearing, both the Department and the court recognized that both parents needed a full substance abuse program. Father points to the lack of any evidence the Department provided father with referrals, but this

14

argument is hypothetical and disregards the facts before us. According to the jurisdiction and disposition report, father reported he had already enrolled in an outpatient substance abuse program at Clinica Romero in September 2020. The Department also reported, in a last minute information report, that father subsequently enrolled in a residential treatment program just days before the jurisdiction and disposition hearing. The court found father had not yet fully addressed his addiction problems and, given the risk of relapse, there was no reasonable alternative to removal.

Father's only other argument is that the court failed to consider reasonable alternatives such as conditioning daughter's return to his physical custody on his continued participation in the drug treatment program, or permitting father to live with paternal relatives and ordering the Department to conduct frequent unannounced visits. Considering daughter's young age and father's shifting stories about his interactions with family members and law enforcement, father has not met the burden of showing that a finding of no reasonable efforts was compelled as a matter of law.

## DISPOSITION

The court's jurisdictional finding and dispositional orders are affirmed.


MOOR, J.

We concur:


RUBIN, P. J.


KIM, J.